Good morning, and may it please the Court. My name is Ryan Roman, and I represent the appellants Vaughn Boyd and Drew Estate. I'd like to reserve two minutes of my time for rebuttal. The lower court erred by misconstruing this action, which raises solely Federal trademark claims as a contract action, and by dismissing on the basis of a form selection clause that is neither implicated nor mandatory. Ms. Boyd and Drew Estate ask that this Court reverse the lower court's decision and allow them to pursue their Lanham Act claims in Federal District Court. Vaughn Boyd is the original owner of Deadwood Tobacco Company, a retail cigar bar that is located in Deadwood, South Dakota. Drew Estate is a globally recognized cigar manufacturer, and it is the exclusive licensee of the Deadwood Marks, which are three trademarks used in a popular line of cigars that were first manufactured in 2009 and then formalized in an exclusive trademark license agreement in 2016. At all material times, Ms. Boyd was the owner of the marks, first through her sole ownership and control of Deadwood Tobacco Company, and then due to the exclusion of the Deadwood Marks from a stock purchase agreement that Ms. Boyd entered into with Mr. Recktenwald and his wife. It is not disputed that Ms. Boyd retained the Deadwood Marks. The purpose of doing so was to serve as her income stream for her retirement from the retail cigar business. This action involves three Lanham Act claims, for trademark infringement, for false designation of origin and unfair competition, and for cancellation of Federal registrations. The claims are conduct-based, not contract-based. In 2022, Deadwood Tobacco Company and Mr. Recktenwald violated the Lanham Act by misrepresenting their infringing line of cigars as an extension of Drew Estate's product line, falsely claiming that they were the originator of the line of cigars that were manufactured, sold, and marketed by Drew Estate. The agreement, the SPA, the contract here at issue, you've got the Deadwood Tobacco Company and cigar bar on one side, right, and then the reservation of the Deadwood Tobacco Company, certain cigar names, right? That's correct, Your Honor. To determine whether there is any kind of violation here, don't you have to kind of tease that out? You've got Deadwood Tobacco Company and those three words are in both what was sold and what was reserved. Isn't that a contractual issue that just needs to be resolved before you would get to any kind of Lanham Act liability? We don't believe so, Your Honor. The record is clear that there's no dispute here as to the ownership of the three marks by Ms. Boyd and the exclusion of those marks from the stock purchase agreement. And the acts of infringement, those come far later than the stock purchase agreement. We don't have to actually, we don't make reference to the stock purchase agreement in our claims. Phillips v. Audioactive, which is a case from the Second Circuit, that also notes that where you don't have to refer to the agreement in order to state your claim. Right, and I understand that you have not referred to the agreement and that was a purposeful choice in your litigative strategy and I understand that. But I'm just trying to figure out, I feel like this is very fact specific with this Deadwood Tobacco Company phrase. There's some overlapping here and it just seems like a contractual issue out of the gate. The claims here are not that they improperly used that Deadwood Tobacco Company name. The claims are for infringement by sending this letter to the trade in 2022 which says, our cigars are an extension of the line of cigars, what's referred to the three marks that Ms. Boyd, that were excluded from the SPA and Ms. Boyd retained. And so by representing as an extension and an introduction of cigars that are a part of that line, that's just simply a false statement. And doesn't rely upon going back to the SPA in order to make that determination. Here the language of the potential form selection clause is whether or not the dispute arises out of the SPA. So let me ask you counsel, are there any provisions in the SPA that would need to be consulted to determine the Lanham Act claims? No Your Honor, nothing in the pleading requires a reference to that. We do not believe that that's necessary at all in deciding whether or not the acts of infringement occurred. Here we take the conduct which is the letter to the trade and other conduct that occurred on their website and we compare that to the original ownership and registration of the marks now in Ms. Boyd's name and determine whether or not there was a false designation of origin or an infringement. There are no breach of contract claims in the state court action or in this action arising out of the SPA. So Deadwood Tobacco says in their brief that the SPA created and set out the trademark rights of the parties. I thought they were simply excluded in the SPA. That's correct. The trademark rights were not created and trademark rights are not created by contract. They're created by statute and so the registration of the marks here and that's in the record where the marks exist is from 2014 for the three marks that are at issue here. There are two cases from the Second Circuit that are particularly instructive. First, Incorrigus, then Chief Judge Sotomayor, defined what arising out of means in this context and it's either an origination from a specified source or a causal connection between the injury and the excluded activity. Phillips expands upon that and describes how narrow this interpretation is versus related to or being associated with or even arising in connection with the contract, which is not the language we have here. We have arising out of language, the most narrow language. Even if the contract was raised as a defense, that is not sufficient as the court held in  We also cite to Agrotiki, a Southern District of New York case, for that same proposition. Particularly with respect to Lanham Act claims, the federal courts are the proper forum. The district court here erred by failing to consider that federal law governs the claims here while only state law claims are at issue in the state action. And that relies upon this court's decision in Verizon Communications versus in Verizon International, where this court reversed a district court's stay of a federal trademark action in favor of a state court proceeding. And this court emphasized that the presence of a federal question is a significant factor and it held that, quote, federal courts now decide all but a few trademark disputes. Today the Lanham Act is the paramount source of federal, of trademark law in the United States as interpreted almost exclusively by the federal courts. And the district court's failure to consider this factor was found to be reversible error in that case. Similarly, in the Supreme Court's decision in Moses H. Cohn Memorial Hospital versus Mercury Construction Corporation, the Supreme Court there held that federal courts should not surrender jurisdiction over federal questions absent exceptional circumstances. And lastly, the form selection clause at issue here is not mandatory. The clause contains two provisions. The second provision that the circuit court in Lawrence County shall have jurisdiction over the parties and subject matter of the dispute, that is a consent to jurisdiction. It is not a mandatory form selection clause. Let me ask you, maybe there's an easy answer to this question, but would the form selection clause preclude removal of a case to federal court if removal was otherwise appropriate or would it be contractually prohibited? As interpreted by the district court as a mandatory form selection clause, it would prohibit removal and it would prohibit bringing claims in federal court for which there's exclusive federal jurisdiction. That's why we believe the court's, the district court's decision in Exgel or the Eastern District of Missouri held that where there is no physical federal courthouse present in the county, you still can remove a case or bring an action in the federal district court that has jurisdiction over that county. That's the interpretation that we're urging here with respect to the first clause in the form selection provision, which provides that venue for any dispute arising out of disagreement shall be in Lawrence County, South Dakota. That does not specify federal versus state court. Does it also say circuit court, though? It only does in the other provision that's a consent to jurisdiction, that the parties consent to jurisdiction, which was important here because the Rechtenwalds, who are a party, did not reside in South Dakota. As you can see in the stock purchase agreement at page 95 in the record, they resided in Red Wing, Minnesota at that time. If I may reserve the rest of my time for rebuttal. Thank you. You may. May it please the court, counsel. My name's Ken Monroe and I'm here for Deadwood Tobacco Company. As a court, this is the third federal court that has heard this same argument. This argument, identical argument, was made in the Southern District of Florida when the Rechtenwalds were sued by the plaintiffs and dragged down to Florida. The court had the petition, the complaint that was filed in that case, set out the actual basis of this case, and that is that there were a variety of agreements that were entered into between the plaintiffs and the defendants in this case. The variety of agreements included the stock purchase agreement. The stock purchase agreement had a mandatory forum selection clause and entered an order dismissing that case, that complaint. After that happened, we filed action in the appropriate jurisdiction, which is the circuit court for Lawrence County, South Dakota. Following that, another case was filed, and this one was filed in federal court in South Dakota. So, the court asked the question, is this a contractual claim? The earlier two courts that saw this, both the Southern District of Florida and the District of South Dakota, determined that it was a contractual claim. In Florida, though, they had referenced the documents, though, correct? And they've removed those from this claim? Yeah, they did, Your Honor, yes. They removed those. In Florida, according to the plaintiffs, this was a contractually based trademark action. Now, the argument that you're making is that the trademark came out of the ether. The question was asked, Your Honor, prior to the date of the stock purchase agreement, Deadwood Tobacco Company owned these trademarks. Vaughn Boyd didn't own the trademarks. There's no indication that they're going to pierce their own corporate veil. They're separate entities. Vaughn Boyd didn't own the trademarks. So let's, maybe if we could, just get to what I think is the nub of the issue. In what way do the Lanham Act claims require interpretation or examination of the stock purchase agreement? Well, Your Honor, the defense of the Lanham Act claims would be that we have the trademark rights to the name Deadwood Tobacco Company. We could use the name Deadwood Tobacco Company. When Deadwood Tobacco Company said in a letter that was cited by the plaintiffs that Deadwood Tobacco Company created these three cigars, they did. Deadwood Tobacco Company created the three cigars that were kept out, excluded from the contract and became then thereafter the right of Vaughn Boyd. If they were excluded, then why would you need to look at the stock purchase agreement? Well, because we have trademark rights as well, Your Honor. We have every other trademark named in existence. We have the name. And is there a dispute over those trademarks? Well, there's no dispute over these trademarks either, Your Honor. Yeah, actually, there is a dispute, which was the basis for the Florida complaint and is the basis for the contractual action in South Dakota to determine what rights we have. Did we have the contractual right to use the name Deadwood Tobacco Company on a cigar? Do we have the contractual right to tell people that Deadwood Tobacco Company created the first three cigars and therefore this is an extension of those cigars? That when we talk about the trademarks weren't created, the trademark rights were created. Because before the stock purchase agreement, as I stated, Deadwood Tobacco Company owned all of the trademark rights for every cigar that you could imagine named Deadwood Tobacco Company based on the patent Deadwood Tobacco Company and Cigar Bar that was entered in 2014, which we cite in our brief. Plus from that, we would own the rights to anything that would conflict with that. They had the right to use three different cigars. Deadwood Tobacco Company, in this instance, under the Rectum Laws, was creating a different cigar with the name Deadwood Tobacco Company on it. I know they tried to pare this down, but there is no way to separate the contract from the Lanham Act claims. The trademark rights that Deadwood Tobacco Company now has and has always had and the were created in this stock purchase agreement for Vaughn Boyd that she now has. Judge Kelly made a good point and that is they all say Deadwood Tobacco Company on them. What right do we have under the contract to say, hey, you know what, we're selling Deadwood Tobacco Company cigars and Deadwood Tobacco Company invented these cigars. We made them because they did. It's interesting. There'll be other claims that come up, but there's no way to separate the contract from the Lanham Act claims. They all involve an interpretation of the contract. What rights did we maintain? What rights did we give away? That's really the question. For them to prove that we violated it, they have to say we have no contractual right to use our own name on cigars or that we have no contractual right to point out that the earlier cigars came from Deadwood Tobacco Company, but these are all contractual questions. There's no way around it. They mention the contract, the stock purchase agreement, in their complaint. They kind of have to because you can't explain the story without saying where the contractual rights came from and whose are here and whose are here. But as both courts have decided, the South Dakota court should decide what the contract claim is and what contractual rights are there. You can't get to a Lanham Act claim unless they have specific, they know whose rights are whose. Our defense would be obvious, Your Honor, and that is that we have contractual right to use this name. They can avoid that by artfully trying to get around that in their complaint, as the district court found they did. Counsel, this is Judge Smith. What's your best authority that the provision for jurisdiction in South Dakota State Court is mandatory? Your Honor, we cite a number of cases to that. But it's shall, the word shall, Your Honor, and I think we cite in our brief where it is mandatory. In fact, we cite both the rulings from the Florida and the South Dakota courts, but essentially, if you're looking at it, the question would be a question of South Dakota law because it's a contract interpretation of South Dakota law. The federal court used that. The case that they said was two, but one of them, Tri-City Associates, LP versus Belmont, I think is important because what the plaintiffs want to do here is they want to pretend like you can read pieces of the contract, and of course, there is no contract law that doesn't say you have to basically, basic contractual interpretation requires that you look at the whole contract. You don't just take parts out of order. If this is going to be brought in the venue of Lawrence County, South Dakota, and it's under the circuit court of Lawrence County, South Dakota, and the word shall is in there, then it's a mandatory foreign selection clause. Judge, you hit right to the nub of it, and that's exactly it. I wasn't quite sure I was going to talk for 10 minutes up here about it. The issue is pretty straightforward, and that is there's no way this is not a contract claim. It is a contract claim. A contract claim was brought in an interpretation of the contract in the South Dakota District Court case. We have a summary judgment motion outstanding waiting for ruling from the court on that. The stock purchase agreement created Vaughn Boyd's trademark rights. He had none before then. They were created in that. That Deadwood Tobacco Company and the stock purchase agreement retained certain trademark rights, and the question is solely, what does that contract mean? What rights do we have? Until that's determined, there can't be a decision in any kind of a Lanham Act claim, whether it's one that we bring, which is probably going to happen, or not. What we did is we filed the motion in South Dakota. We filed the petition in South Dakota. We asked for a declaratory judgment action because we didn't want to get dragged through endless amounts of discovery until the court made a determination that this is exactly what rights existed. It's a mandatory form selection clause. They're talking about the Verizon case didn't involve a form selection clause. There isn't one in there. A case was brought in state court. They wanted to remove it to federal court for federal questions. It's completely irrelevant to this case. The other case that they cited was Phillips, where they're talking about a different circuit. The important language in Phillips, if you read it, is the court there said, what we need to do is get rid of the titles and figure out what these claims are, what's the basis of them. They use the term shorn of titles. Is this a contract claim or is this a Lanham Act claim? They said, if you take the titles away, that's a decision you make. They decided in that case that it was a Lanham Act claim because the contract really didn't have anything to do with the claims that were being made. In this case, they do. They create the claims. They define the rights that different parties have. There's really no way that they can separate that. Their attempt to do so, I think, as the district court found, was a dodge. I see I have 20 seconds left. If there's any other questions. I see none. Thank you. I'll give you a full minute. Thank you, Your Honor. The Florida case involved different claims. The judge in that case actually applied an incorrect analysis. It evaluated the claims under a relating to, not in a rising out of standard. If you look at that order, which is part of the record, you'll see repeatedly a reference to related to. Also, the judge explicitly acknowledged that South Dakota Federal Court was a permissible venue. I quote at page 149 of the record, South Dakota Federal Courts can provide the plaintiffs with precisely the same relief that's available here. It did not foreclose us from pursuing relief on our Lanham Act claims in Federal District Court in South Dakota. Ms. Boyd did not own the trademarks before the SPA was one of the arguments made by Appellee's Council. However, under Keele versus Lionsgate, which is a TTAB, Trademark Authority Board decision, which has been referenced by at least one California District Court, where there is sole ownership and it is so connected, you can deem the individual to be the owner of the marks, even if it's held in a corporate name. With respect to the relevance of the SPA, according to the Appellee's Council, it's as a defense to the Lanham Act claims. But Phillips specifically states, as does Zagroticki, that a defense alone is not sufficient in order to make it a rising out of and sufficient to bind it by the form selection clause. Very briefly, and I say I'm out of time, if I may just complete with another 10 seconds, Your Honor. 10 seconds. I apologize. Dunn versus Libra, which is a decision of this court, states that shall does not always mean mandatory. And finally, the state court claims in South Dakota do not involve the SPA, as you'll see in the record. And I thank you for your time and ask that you reverse the lower court's decision. Thank you. Thank you.